**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

REGIONS BANK                                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 2:15-CV-163-KS-MTP

S. L. WINDHAM, JR.                                                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Regions Bank's ("Plaintiff") Motion to Compel

Arbitration and to Enjoin Defendant ("Motion to Compel") [3].  Having considered the submissions

of the parties, the record, and the applicable law, the Court finds that the Motion to Compel [3]

should be granted in part and denied in part.

## I.  BACKGROUND

On October 1, 2015, Defendant S. L. Windham, Jr. ("Defendant"), filed an amended

complaint against Plaintiff in state court, alleging that it had improperly allowed withdrawal from

several Regions accounts (the "Accounts") co-owned by Defendant.  On December 17, 2015,

Plaintiff filed the current action pursuant to the Federal Arbitration Act, asking this Court to compel

arbitration of the dispute and to issue an injunction preventing Defendant from pursuing his claims

in the state court proceedings.

Defendant's relationship with Plaintiff began in November 2005, when Defendant opened

the first of his accounts with what was then AmSouth Bank.  In opening this account, Defendant

signed a signature card that agreed to AmSouth's customer agreement, which included an arbitration

clause stating

SECTION 6, DISPUTE RESOLUTION:  ARBITRATION

The following applies to all of the above referenced account types and agreements,
as well as to any dispute you may have with us:

ARBITRATION PROVISION

ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL.  Except as expressly provided below, you and we agree that either party may elect to resolve by BINDING ARBITRATION any controversy, claim, counterclaim, dispute or disagreement between you and us (any "Claim").  This includes, but is not limited to, any controversy, claim, counterclaim, dispute or disagreement arising out of, in connection with or relating to any one or more of the following:   (1) the interpretation, execution, administration, amendment or modification of the Agreement; (2) any account; (3) any charge or cost incurred pursuant to the Agreement: (4) the collection of any amounts due under the Agreement; (5) any alleged contract or tort arising out of or relating in any way to the Agreement, any account, any transaction, any advertisement or solicitation, or you business, interaction or relationship with us; (6) any beach of any provision of the Agreement; (7) any statements or representations made to you with respect to the Agreement, any account, any transaction, any advertisement or solicitation, or your business, interaction or relationship with us; or (8) any of the foregoing arising out of, in connection with or relating to any agreement which relates to the Agreement, any account, any transaction or your business, interaction, or relationship with us.  If either party elects to arbitrate, the Claim shall be settled by BINDING ARBITRATION under the Federal Arbitration Act ("FAA"). . . .

(AmSouth Agreement [3-5] at p. 19.)  AmSouth merged with Plaintiff in 2006, and Plaintiff became the successor by merger to this agreement.  In June 2013, Defendant opened eight additional accounts with Plaintiff, all of which required agreement to the same arbitration clause.  (*See* Regions Card 7798 [15]; Regions Card 7537 [16]; Regions Card 5405 [17]; Regions Card 5367 [18]; Regions Card 5249 [19]; Regions Card 5090 [20]; Regions Card 3532 [21]; Regions Card 0614 [22].)  He opened a final account with Plaintiff in October 2014.

In the state court suit, Defendant claims that Plaintiff allowed over $300,000 to be unlawfully withdrawn from his accounts.  Plaintiff asks that this Court require Defendant to submit his allegations to arbitration pursuant to their agreement and asks the Court to enjoin Defendant from pursuing his state court action.

## II.  DISCUSSION

### A.      Motion to Compel Arbitration

"In adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts begin by determining whether the parties agreed to arbitrate the dispute." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2003).  In determining this, the Court relies on "ordinary state-law principles that govern the formation of contracts." *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)).  The Court must determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement" *Am. Heritage Life Ins., Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003) (quoting *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)).

There is no argument from Defendant that the dispute does not fall within the scope of the arbitration agreement, and the Court assumes he concedes this issue.  His only arguments go towards the validity of the agreement itself.

Defendant admits that he signed the signature cards for the Accounts.  The earlier signature card for the AmSouth account explicitly states that "[e]ach person signing . . . agrees to be bound by the Bank's customer agreement."  (Reverse of AmSouth Card [3-4].)  AmSouth's customer agreement states that parties are "to resolve by BINDING ARBITRATION any controversy, claim, counterclaim, dispute, or disagreement."  (AmSouth Agreement [3-5] at p. 19.)  The remaining signature cards for the Regions accounts not only state the signer agrees to Regions' Deposit Agreement [9][10][11][12][23][25], which contains the same arbitration clause, but also specifically states that this "includ[es], without limitation, the ARBITRATION AND WAIVER OF JURY TRIAL provisions thereof."  (Regions Card 7798 [15]; Regions Card 7537 [16]; Regions Card 5405 [17]; Regions Card 5367 [18]; Regions Card 5249 [19]; Regions Card 5090 [20]; Regions Card 3532 [21]; Regions Card 0614 [22].)  There can be little doubt, then, that Defendant entered into an

3

agreement to arbitrate with Plaintiff.  However, Defendant claims that this agreement is not valid because (1) he did not have the mental or physical capacity to contract at the time and (2) the agreement is unconscionable and therefore void.

Defendant's first argument against the validity of the agreement is a capacity defense that goes to the entire agreement, not just the agreement to arbitrate.  In *Primerica Life Ins. Co. v. Brown*, the Fifth Circuit held that a similar capacity defense that challenged the entire agreement must be submitted to arbitration pursuant to the Supreme Court ruling in *Prima Paint Corp. v. Flood & Conklin Manufacturing Corp*., 388 U.S. 395, 87 S. Ct. 1801, 18 L.Ed.2d 1270 (1967).  *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002).  The Fifth Circuit reasoned that because the capacity defense was "part of the underlying dispute between the parties," it had to be submitted to arbitration.  *Id*.  Defendant's capacity defense is indistinguishable from the type introduced in *Primerica*, and must similarly be submitted to arbitration.

Defendant's second argument is that the arbitration agreement is both procedurally and substantively unconscionable and therefore invalid.  He contends that the arbitration clause "affront[s] the sense of decency," that he "was not given a meaningful a choice," and that "the contract terms are unreasonably favorable to Regions."  (Response [7] at p. 5.)

Mississippi state law controls whether the arbitration agreement is unconscionable.  "An unconscionable contract is 'one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other . . . .'" *Smith v. Express Check Advance of Miss., LLC*, 153 So.3d 601, 607 (Miss. 2014) (quoting *Terre Haute Cooperage v. Branscome*, 35 So.2d 537, 541 (Miss. 1948)).  Unconscionability may be substantive or procedural.

4

To be substantively unconscionable, the agreement must be "so unreasonably favorable to one party that the contract imposes oppressive terms on the weaker party." *Id.* at 607-08. This type of unconscionability "may be evidenced, but not established, by showing that the contract is one of adhesion," which is a contract drafted by the dominant party and offered on a take-it-or-leave-it basis. *Id.* at 608. While there is no doubt that the agreement between the parties is a contract of adhesion, this alone does not establish that it is substantively unconscionable. Defendant argues that the arbitration clause is oppressive and one-sided because it would force him to have to share in the costs and fees of arbitration according to the AAA Commercial Fee Schedule and, should he lose, could require him to pay for Plaintiff's arbitration expenses.

Defendant's initial cost for arbitration would be a $200 filing fee. (AAA Supplement [8-1] at p. 12.) There is nothing in the record that indicates that Defendant could be required to pay Plaintiff's arbitration expenses. Furthermore, Plaintiff has agreed to pay this fee for Defendant and to forego any right it may have to ask the arbitrator to award them any costs of the arbitration. (Rebuttal [8] at p. 10; *see also* Letter [8-2].) The Court therefore cannot find that the arbitration agreement is so unreasonably one-sided and oppressive as to be substantively unconscionable.

The Court also does not find that the arbitration agreement is procedurally unconscionable. "Procedural unconscionability is established by showing 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or lack of opportunity to study the contract and inquire about the contract terms.'" *Smith*, 153 So.3d at 609 (quoting *East Ford, Inc. v. Taylor*, 826 So.2d 709, 714 (Miss. 2002)). Defendant does not explain in what way the arbitration agreement was procedurally unconscionable, but the Court nevertheless finds that it is not.

In the AmSouth Agreement [3-5], the arbitration clause is in no way hidden from the reader, as it is in the same font as the rest of the agreement and is clearly labeled "SECTION 6. DISPUTE RESOLUTION: ARBITRATION." (AmSouth Agreement [3-5] at p. 19.) For the Regions accounts, the arbitration clause is even more pronounced, with the signature cards clearly referencing the clause and the clause itself bolded in the agreement. (*See* Regions Cards [15][16][17][18][19][20][21][22]; Deposit Agreement [9][10][11][12][23][25].) Defendant cannot argue that he had no knowledge of the arbitration clauses as he has already admitted to signing the signature cards. *See Smith*, 153 So.3d at 610 ("The law imposes a duty on a contracting party to read what he or she signs.") The only potential aspect of the agreement that may weigh in favor of procedural unconscionability is the difference in sophistication and bargaining power between the parties. However, even if Defendant did possess an advantageous position in the contracting, because this imbalance did not result in oppressive terms, the arbitration agreement cannot be found to be procedurally unconscionable on this fact alone. *Smith* 153 So.3d at 610.

Because the agreement is not substantively or procedurally unconscionable, the Court finds that a valid arbitration agreement exists between the parties. Furthermore, it is conceded that this dispute falls within the scope of the arbitration agreement. "Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L.Ed.2d 444 (1985). As no such rights are at issue in this case, the Court will **grant** Plaintiff's Motion to Compel [3] with respect to its request that Defendant be compelled to arbitrate the dispute.

    **B.**    **Motion to Enjoin Defendant**

Plaintiff has also requested that to the Court enjoin Defendant from proceeding with the claims against it in state court. Though framed in different terms, such an injunction would result in a stay of state court proceedings. A district court has the discretion to issue an injunction staying a state court proceeding when it compels arbitration under the "necessary in aid of its jurisdiction" exception of the Anti-Injunction Act, 28 U.S.C. § 2283. *See Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 893 (5th Cir. 2013). However, such an injunction does not issue automatically. To secure an injunction, Plaintiff must demonstrate

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).

Plaintiff has made no attempt to show that any of these elements are met. As such, the Court will not exercise its discretion in issuing an injunction staying the related state court proceedings and will therefore **deny** Plaintiff's Motion to Compel [3] with respect to this request.

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiff's Motion to Compel [3] is **granted in part** and **denied in part**.

It is **granted** in that parties are hereby ordered to submit their dispute to arbitration.

It is **denied** in that no injunction will issue against Defendant in connection with the related state court proceedings.

SO ORDERED AND ADJUDGED this the 1st day of February, 2016.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE